Our next case is United States v. Graham. Mr. Heldman, you've reserved 5 minutes for rebuttal, but please keep track of your own time as well. Yes, Your Honor. Thank you. And again, I am Sam Heldman for Appellant Rick Graham. I appreciate the opportunity to speak to the court today. I'm glad to report that this is a simpler case than the last one. It was a two-count criminal case, a trial that lasted two days from jury selection to verdict. The main issue in the case is that the district court so thoroughly precluded the defense from offering evidence that would have allowed the jury at least to see reasonable doubt on the one critical disputed issue of fact in the case. And that critical disputed issue of fact was what was on Rick Graham's mind? What was his intent? Was he, as the government contended, intent on defrauding the IRS? Or was he, on the contrary, himself the victim of a scam? The government story was quite simple, that he owed a lot of taxes and that for years and years he tried diligently to pay them, and he paid off a lot of them, but then somehow in summer of 2014 he totally did a reversal, went from being a great cooperator with the IRS to trying to defraud. I suspect that the government may actually characterize that differently, but we'll see what they say when their time is up. Okay, yes, your honor. The defense story, by contrast, was that Rick Graham never had the intent to defraud or to corruptly impede the IRS. So what we're talking about, obviously, is some documents styled International Bill of Exchange, and they're no good, we all agree with that, and some accompanying documents that contain some kooky stuff. Now the question is, did Rick Graham think that he was defrauding the IRS? Did he know that these documents were worthless, but somehow thought the IRS would fall for them? Or, on the contrary, was he the guy who was defrauded by the people from Atlanta? And the problem is that the district court, simply through a series of erroneous hearsay rulings and relevance rulings, wouldn't let Rick Graham put in the evidence that would support his closing argument that would allow the jury to see reasonable doubt. And the worst of this... Go ahead. I'm sorry. The worst of this was in the testimony of Thomas Walker, who was the fellow who got Rick Graham up with the fellows from Atlanta, who were the ones who created these documents. And the district court would not even let Mr. Walker say what those fellows from Atlanta told him about the documents. Because the district court says that was hearsay. Well, it was not being introduced for the truth of the matter asserted. The government recognizes that now. Obviously, what Mr. Walker would have said about that would make a difference in terms of what was likely on Rick Graham's mind. If he had been told by the fellows from Atlanta, hey, this is a fun scam, and it sometimes succeeds in tricking the IRS, that'd be one thing. If, on the other hand, what the actual testimony would have been if they told him, look, not many people know this, but blah, blah, blah, blah, blah, blah, blah, and there's a secret account and blah, blah, blah. So why does it matter what Walker thought? Why doesn't it matter what Walker said your client, rather than what he thought? It matters in various ways, Your Honor. First, it matters because the jury might well say, look, if Walker fell for it, Walker, who's more knowledgeable about this sort of thing than Graham, if Walker fell for it, how can I be sure that Graham, who was using Walker as the go-between, why am I sure beyond a reasonable doubt that Graham knew that Walker was a rube? That Graham knew more than Walker did, when everybody's telling us that Graham didn't know anything, which was relying on Walker. So you can't get, you have much more reason to doubt that Graham was in on some scam if you know that his go-between was not in on the scam. Let me ask you, did you ever attempt to introduce statements by Walker made to Graham? To the effect of bearing on Walker's state of mind and therefore on Graham's? I was not in trial, Your Honor, but I have read the record. I think the best answer to that is that the district court said, you can't get into what these guys told Walker. It's hearsay to tell you, don't ask any more questions about, quote, somebody telling him they know how to do something. The reason I'm sorry that I asked you the question is, it seems to me Walker's state of mind might be relevant to Graham's state of mind, if indeed Walker communicated it to Graham, or there was any indication that the defendant was aware of Graham's state of mind, but I didn't see in the record any indication that the defense attempted to introduce or proffered anything bearing on any statements Walker might've made to Graham, advice Walker may have given to Graham, or something to that effect. Have I misread the record? Have I misapprehended that? I don't know. No, Your Honor, you have not misapprehended the record, but what I would emphasize is that the district court shut us down before you could even get to that. You can't ask, Mr. Walker, did you tell Mr. Graham that you were acting in good faith, when the district court said you can't even ask Walker if he was acting in good faith. You can't say, Mr. Walker, did you tell Mr. Graham what the fellows from Atlanta told you, when the district court said you can't even ask Mr. Walker what the fellows from Atlanta told you. So, no, we were shut down before we could even get to that. There's no way to say, to ask the question of Mr. Walker, what did you tell Mr. Graham, when the district court had said, look, what Walker thought is irrelevant. Although, I think it seems like maybe you've said it backwards, that what Mr. Walker thought may have been irrelevant, but what Mr. Walker said to Graham, I suspect the court would find perfectly relevant. I don't share that suspicion, Your Honor. I think the district court was of the view that anything said outside the courtroom was hearsay. The problem is, we don't know, though, because your colleague never sought to introduce any evidence to that effect. And I agree with that, Your Honor, but let me suggest that that is not the end of the analysis, because telling someone something is not the only way that one's mental state can affect one's own mental state. You have a hard time establishing an abuse of discretion, it seems to me, going to the question of Walker's state of mind, in the absence of trying to show that Walker's state of mind was X, and he communicated in words or substance that to the defendant. Absent an effort to communicate it, it seems to me it would be a precious little moment. What about the other hearsay rulings? The other hearsay... Hello? Hello, we lost you? Is he gone? I think we have lost the defendant's lawyer. Would you please stop the time for a moment, and we'll see what we can do to get it back. Yes, Your Honor. Joe, it's great. I'm going to try to recall him. Thank you. Hello? Hello? Hello, is Mr. Haldeman back? Yes, I am so sorry, Your Honor. I don't know what happened there. That's all right. The good news is the line sounds better now anyway, so please continue. Okay, so the other hearsay rulings were, for instance, did you change the social security number on one check at the direction of Ben from Atlanta? And the district court said that was hearsay. All sorts of things were hearsay. Did you give the agent Ben's telephone number? Well, that's hearsay. Those are not the more crucial things in the case. The more crucial things in the case were, for instance, and if I could get back to Mr. Walker. Again, Mr. Walker would carry himself differently if he thought it was a scam versus if he thought it was real. Did you seek to have Mr. Walker testify? Yes, Mr. Walker did testify. He did testify. That's right. That's right. Yes. But the district court also wouldn't let us, wouldn't let Mr. Walker explain that come November, Rick Graham got even crazier looking documents. And at that point, he cancelled his contract with Walker. Now, the jury could understand from that that what happened was that this showed that Rick Graham hadn't thought he was running a scam, hadn't thought he was part of a scam back in July, August, October, and the scales fell from his eyes when he saw the crazier documents. Again, is that perfect proof? No. But is it relevant? Yes. Is what Walker knows perfect proof? No. But is it relevant? Yes. Because you can readily imagine the jurors understanding this whole story. And the government is always- Excuse me. I don't want to interrupt, but I know you're running low on time. Could I ask you to address the Marinello issue before you sit down? Sure, Your Honor. Would you like me to speak to that or do you have a question in particular? Essentially, you said that the other issues were more important to you. Do you think that there's any standard of Marinello under which your client's case does not have a nexus to a tax action under Marinello? Yes, Your Honor, because what Marinello requires is an administrative proceeding. What an administrative proceeding means under Marinello is not defined in Marinello itself. They give examples of audits and investigations. But what we suggest is that an administrative the administrative proceeding has to be pending or at least in the offing. And so we suggest there was nothing in this case that was pending in the way that a proceeding pens. Sure, there had been notices of there had been liens put on things. What about the fact that Marinello says that to secure a conviction under the omnibus clause, the government must show that there is a nexus between the defendant's conduct and administrative proceeding. And then the examples are such as an investigation, an audit, or other targeted administrative action. Does that really support the idea that it has to be some sort of official, almost quasi-judicial proceeding, as you seem to be suggesting? Isn't that a pretty broad definition of administrative proceeding? Uh, I'm not saying it has to be a quasi-judicial proceeding, actually, Your Honor, but I'm saying it has to be a proceeding in some sense, like an investigation. How is an investigation a proceeding? In the same way that grand jury investigations are proceedings. Right, most investigations, most investigations commence without a grand jury. Here they appoint a revenue officer, they determine that there are substantial taxes due and owing, and over an extended period of time, they take many targeted and specific efforts to reclaim what they believe were taxes due and owing, including but not limited to notices of placing levies, seizing property, selling property, and throughout giving him notice that he's entitled to a hearing on many of those steps if he chooses to avail himself of it. Why isn't the totality of what happened here the kind of thing that goes far beyond a routine administrative matter such as simply accepting and processing a tax filing in the ordinary course? Seems to me they went far beyond the ordinary and routine when they began to collect revenue through all of these methods. Why isn't that enough to meet the Maranello standard the Supreme Court lays out? Because your honor, there was nothing at this time that was pending as a proceeding other than I think the government will say well just in general maybe we were going to keep on trying to collect, but I submit to the court that in general we're going to keep on trying to collect does not constitute an administrative procedure. Well didn't they do more than say in general we're going to keep trying to collect? Didn't they in the particular focus on him investigate him and seek to obtain monies to make the government whole? There is evidence that that had been done in the past, yes your honor. There is no evidence that any investigation was ongoing or pending at this time. No indication that the government was a much harder case. How do you suggest that without an investigation all of the actions against your client took place that occurred? That something certainly happened out of the ordinary besides a person submitting their tax returns and then paying them? Oh yes your honor, there was I think the record can be read to say there was investigation in the past, yes. My point is there is no evidence that any such thing was ongoing for Rick Graham to be trying to obstruct. So I guess if the court has no further questions I should use the rest of my time for heart man. Good morning, may it please the court, Alyssa Hart-Mahan for the United States. I think a brief overview of the facts here is helpful. The record establishes that Mr. Graham was a successful businessman who earned millions of dollars between 2006 and 2009. He filed tax returns acknowledging those tax debts but did not pay his taxes in full. And while he may not have attempted to actively obstruct the IRS prior to 2014, the record makes clear that he did not comply with his tax evasions. He made some his tax obligations. He made some partial payments and the revenue officers testified that you know he didn't attempt to obstruct their efforts to collect but he was not in compliance with his tax obligations. And two different revenue officers testified at length about their efforts to collect their investigation into available assets and property, their seizure of bank accounts and real property, and the application of the funds resulting from those seizures being applied to his tax debt. Now in 2014, this is when the obstruction begins as alleged in the indictment and as found by the jury, Graham presented two fake checks to the IRS for $3.6 million. And there is a clear nexus between his submission of those fake checks and the IRS's collection action. In June of 2014, he received a notice of intent to levy from the IRS listing his total tax debt as approximately $3.5 million. The next month, he took the fake check for $3.6 million to the IRS, submitted it to the IRS and that notice of levy from the preceding month was attached to that fake check and part of the documentation attached to the fake check demanded that the liens be released from his property as a result of the submission of this bill of exchange. The district court, in our view, properly excluded evidence that was not Thomas Walker did in fact testify about some statements that he made to Graham. And I would refer the court to page 159 of volume two of the trial transcript, in which Walker describes how he met Graham, what he told Graham about how he could potentially help him with his tax debt, and he knew these guys that did these bills of exchange. The district court admitted that testimony, the government did not object to that testimony on during Chris's cross-examination, that he told Graham that he had never done any work with tax elimination. And again, that testimony was admitted, there was no objection to that testimony. The evidence about Walker's independent state of mind was not relevant to Graham, absent some connections between the two, absent some indication that Walker communicated that to Graham, that the statements that Reese and Maddox, the guys from Atlanta, made to Walker were ever communicated to Graham. And the district court properly excluded that evidence as irrelevant, and also under rule 403, because any marginal that it had was outweighed by the possibility that the jury would be confused or distracted by this testimony about Walker's state of mind. So the district court properly exercised its discretion in excluding that testimony. The district court's hearsay rulings, Mr. Graham now argues on appeal that the statements were clearly not offered for the truth of the matter asserted, but we would note that that argument was never made to the district court. And, you know, if the defense counsel had pointed out to the district court that the statements were not being offered for the truth of the matter, we submit that the court would have considered that argument. The record that the court was certainly willing to consider evidentiary arguments, there were numerous sidebars throughout the trial, where the district court heard arguments from both sides about evidence that they wanted to admit, and that the district court was certainly open to hearing that argument and did not prematurely shut anyone down. The 404B evidence of Mr. Graham's prior conviction was properly admitted to show that the documents that he submitted to the IRS in 2014, he did not believe to be true and correct, that he knew that they were false, because those documents directly contradicted his guilty plea from the 2006 conviction in which he acknowledged that he was subject to the tax laws and was required to file a tax return. The district court made clear that that was the basis for its ruling and gave, excuse me, properly gave limiting instructions both at the time the evidence was admitted and in its final instructions to the jury. If the court... On the Marimela issue, I think that opposing counsel has asserted that although there was an investigation, this alleged obstruction had nothing to do with that investigation. What's your response to that contention? That's simply inconsistent with the record, Your Honor. As I noted earlier, the fake checks were given to the IRS directly in response to notices of levy that the IRS had issued and that put the defendant on notice that the IRS's collection actions were ongoing and that the IRS was looking for property to seize and looking for ways to satisfy the defendant's tax debt. Again, the timeline here makes that the notice of levy attached to the check, so it's in Exhibit 9, which is in Volume 1 of our Supplemental Appendix, is dated June of 2014, and then in July of 2014, Mr. Grant attaches that levy, that notice of levy, to the fake check that's in the amount reflected in the notice of levy. So there's clearly the required relationship in time causation and logic that Marimela spells out. And that notice makes clear that the IRS's collection efforts are ongoing. Nothing has been completed. And that revenue officers, you know, continue to investigate. And as our brief makes clear, you know, continue to exercise discretion about when to, you know, when to file liens, when to issue notices of levy, searching for additional property. And we actually believe that the case that we cited in our 28-J letter, United States v. Scali from the Second Circuit, is helpful here. That case also involves civil collection. In that case, the revenue officer was seeking missing tax returns. So the defendant in that case had not filed tax returns. And that's also part of the IRS's civil collection efforts is to contact taxpayers to try to get them to file delinquent tax returns. So the revenue officer contacted the defendant and said, we need your tax returns. And then the defendant submitted false documents to the revenue officer. What happened here, the revenue officers were attempting to collect money rather than delinquent tax returns. They notified the defendant about their collection activities and the defendant submitted fake checks to the IRS. So we think there's actually a very strong analogy between the two cases. I would also cite the court to the Sixth Circuit decision, United States v. Minor, which is included, which we cite in our brief. And that case predates Marinello. But the Sixth Circuit had adopted the pending proceeding requirement that the Supreme Court also adopted in Marinello. And in that case, the Sixth Circuit recognizes that the IRS does not issue deficiency notices or undertake collection action against all taxpayers as a matter of course. Rather, it's a targeted tax-related proceeding. And so it clearly satisfies the pending proceeding requirement in Marinello. How much more does the government think that we need to say besides the short standard, I would say, that's outlined in Marinello, the investigation, audit, or other targeted administrative action, along with their relationship and time causation or logic with that proceeding? Is there a whole lot else that you think we need to go into in order to flesh out that standard? Or is that pretty much it? I mean, I think the standard is pretty clear. And I think that the conduct here clearly satisfies that standard. I do think it would be helpful to make clear that targeted civil collection action by the IRS satisfies that standard. Again, that's what the Sixth Circuit held in Minor and the Second Circuit held in Scali. And so I think that would be helpful. I mean, Marinello is a relatively recent case. And the court in Marinello made clear that it was not, you know, its list of potential administrative proceedings was not exhaustive. So to the extent this court can clarify that, you know, the defendant here is arguing that some sort of quasi judicial proceeding is required, some type of hearing, some type of, you know, fact-finding undertaking. But make clear that a, you know, targeted civil collection action by the IRS satisfies that standard. Great. Thank you. Let me ask you one question. This sentence for the obstruction count was to run concurrently with the sentence on the other count. But I gather the concurrent sentence doctrine would not apply here because I was trying to look through the record. It looks like he did get a separate fee, did he not, based on both convictions, $100. There's a total $200 fee attached. I've forgotten the word for what we call that. But that was $100 for one conviction and $100 for the other count. Is that right? Your Honor, because, you know, there wasn't an appeal of the sentence here, I haven't reviewed the sentencing transcript or the sentencing proceedings. So I can't answer that question. I'd be happy to get back to the court. I think that's probably it. But I was just curious, if it were totally concurrent all the way around, it really wouldn't much matter, the Mariannella part. But I'm suspecting with that that fee may, part of it may have been attributable to the count, the obstruction count, which would mean we didn't have to decide that. All right. Thank you. All right. If the court has no further questions, we ask that the court affirm the judgment of the court. Thank you, counsel. Mr. Heldman, you've got five minutes in response. Thank you, Your Honor. Again, Sam Heldman for Rick Graham. First, briefly on Mariannella, I'm not suggesting that there hadn't been an investigation in the past. There had, obviously. What I'm suggesting is that a filed lien or a noticed levy do not themselves constitute pending proceedings. But those don't appear out of thin air, do they? I'm sorry, Your Honor? A lien doesn't appear out of thin air. Doesn't something have to precede it? And wouldn't that something have a pretty strong nexus? I'm not saying that there's no nexus to the liens and the levies. What I am saying is that those liens and levies were not proceedings that were pending at the time. That's my argument. I understand the court is skeptical, and I appreciate that. So let me move on if the court pleases. The case law is clear that when state of mind is the key, a defendant is entitled to wide latitude in introducing evidence that goes to that. And the standard for relevance is quite broad. As McCormick says, quoted in the committee comments to the rule, not every witness is supposed to be a home run. That's okay. Anything that gets you a little bit further there. Now, the government says that maybe we waived the point that this wasn't hearsay about about how the guys explained and hooked in Walker that we didn't say, hey, that's not offered for the truth of the matter asserted. In fact, evidence rule 103 says what a proponent of evidence has to do to preserve a ruling on evidence. And that is you have to make a proffer unless the content is clear, otherwise clear from the context. And it was quite clear from the, even just from the opening statement a day earlier, what we wanted to prove. So there's no issue. There's no question that the district court knew what we wanted to prove. Didn't he want to prove that this was all, I mean, ultimately he wanted to prove that this was all false and that he had not been aware of that and that these guys were lying. But so don't you need to be a little more specific with the district court to allow the court to rule on the evidence for whatever reason you're actually trying to enter that particular evidence? Well, your honor, no one has suggested that we failed to make the district court adequately aware of the, of what the issue was, what the evidence was under rule 103. And what I'm saying is that that's what a person has to do. That that's how you can fail as a proponent of evidence. When the desk, when the district court said, when, when, when your opponent jumps up and says here, say, and the district court says sustained, there's rule 103 doesn't say you have to then argue with the district judge who's already made the ruling. And again, no one has suggested this in this case, the government has not suggested that we failed to do what rule 103 requires. Now the government is always allowed in this circuit to introduce all sorts of damning evidence that doesn't go exactly to what the defendant did or to his state of mind. And the government is allowed to complete its story, to tell the whole story, to put things in a certain light and to have its witnesses tell, as this court often says, tell the story in a way that includes everything that they would include in an integral and natural telling of their version of what happens. That's what the government gets to do all the time. And what I'm suggesting respectfully to this court is the defendant needs to be able to do that too. And if Mr. Walker had been able to say, these guys told me that there's a system that nobody knows about, that you have your special account. And like a fool, I believed it. And that's why I said, okay, Rick, let's go to the IRS. I was acting in good faith. I, you know, I never gave Rick any hint that I wasn't. All of that, some jurors, I think any juror would have said, you know what? If they fooled Rick, if they fooled Thomas Walker, who's the guy who got him into this, how can I possibly say beyond a reasonable doubt that Rick Graham knew it was a scam when his agent Walker was doing all the talking, did not. That I suggest is the most important part of the case. And I think the jury jury would have been very hard pressed to convict beyond a reasonable doubt. Had they been able to hear that Thomas, how Thomas Walker was fooled and that he was fooled. And I think that would have made all the difference. So if the court has no further questions, that's, that's what I would like to say. Thank you, Mr. Heldman. We appreciate countless arguments in that case as well. Thank you for being with us today.